UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMANDA P.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

24-CV-01275-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.

Plaintiff Amanda P.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 9) is granted, and defendant's motion (Dkt. No. 14) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On October 25, 2019, Plaintiff filed a claim for SSI, alleging an onset date of October 25, 2019. (Administrative Transcript ["Tr."] 53). The claim was denied, and Plaintiff requested an administrative hearing. (Tr. 80, 140-42). Following such a hearing, the Administrative Law Judge denied Plaintiff's claim on March 3, 2021. (Tr. 24-39). On December 9, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

An action was then brought in this Court, culminating in the parties agreeing to remand Plaintiff's case for further administrative proceedings. (Tr. 730). A new hearing was held, and on August 28, 2024, the ALJ issued a decision again denying Plaintiff's claim. (Tr. 623-41). This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] RFC based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

§§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 25, 2019, the application date. (Tr. 628). At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; systemic lupus erythematosus; inflammatory polyarthropathy; and degenerative joint disease of bilateral. (Tr. 628-629). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 629-630). Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a range of light work except:

> she can frequently carry up to ten pounds and occasionally carry eleven to twenty pounds; she can sit for four hours continuously and eight hours total; stand for four hours continuously and five hours total; walk for three hours continuously and five hours total; no right foot controls; frequent left foot controls; frequently use ramps and stairs; never use ladders, ramps, or scaffolds; occasional balance as that term is defined in the SCO; frequent stooping and kneeling; occasional crouching and crawling; frequent work at unprotected heights; no work around dangerous moving mechanical parts; no driving; no more than occasional exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; no more than occasional exposure to extreme heat, cold, wetness, or humidity; no loud noise exposure; no work on uneven ground; no use of public transportation and no work outdoors.

(Tr. 630-633). At step four, the ALJ noted that Plaintiff had no past relevant work. (Tr. 633). At step five, the ALJ found that there are jobs available in the national economy that Plaintiff can perform. (Tr. 634-35). Accordingly, the ALJ found that Plaintiff has not been disabled within the meaning of the Act since October 25, 2019, the application date. (Tr. 635).

IV.    *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded, because the ALJ failed to address how his RFC findings, that Plaintiff could not drive or take public transportation, would affect her ability to work.  The Court agrees.

Courts within the Second Circuit have found an inability to use public transportation relevant to a claimant's ability to perform work. *See, e.g., Soderstrom v. Berryhill*, No. 17-CV-0982 (JFB), 2019 U.S. Dist. LEXIS 78642, at *25-26 (E.D.N.Y. May 9, 2019) (citing *Morrison v. Astrue*, No. CV 10-04564-JEM, 2011 U.S. Dist. LEXIS 137367, 2011 WL 5974962, at *9 (C.D. Cal. Nov. 30, 2011) (remanding due to failure of the ALJ to explore how plaintiff's inability to use public transportation would affect her ability to work); *Alicea v. Astrue*, No. 07 Civ. 2676 (LBS), 2008 U.S. Dist. LEXIS 40530, 2008 WL 2139151, at *2 (S.D.N.Y. May 19, 2008) ("We think that the case must be remanded for the ALJ to consider plaintiff's claim that she cannot use public transportation and thus is incapable of finding and holding a job."); *Andino v. Bowen*, 665 F. Supp. 186, 192 (S.D.N.Y. 1987) ("Indeed, in light of Andino's inability to take a bus or subway by herself, it is not only clear that Andino is unable to work, but it is hard to imagine how she could even get to work on a regular basis.")); *see also Sease v. Comm'r of Soc. Sec.*, No. 1: 18-cv-850-FB, 2019 U.S. Dist. LEXIS 167087, at *10 (E.D.N.Y. Sep. 27, 2019) (citing *Grubb v. Chater*, 992

F.Supp. 634, 640 (S.D.N.Y. 1998) (reversing where "the ALJ made no findings with respect to the implications of plaintiff's inability to use public transportation on her ability to obtain substantial, gainful employment.")).

Here, the ALJ specifically determined in his RFC finding that Plaintiff could neither drive nor use public transportation. (Tr. 630). However, the ALJ did not address in his decision how these limitations would impact Plaintiff's ability to obtain and hold a job. Nor was this issue directly addressed during the testimony of the vocational expert ("VE"), as to how these combined transportation limitations could impact Plaintiff's ability to get and hold jobs. While the ALJ included these limitations in his hypotheticals to the VE, neither the ALJ nor the VE specifically addressed this transportation issue. This issue is especially problematic because the VE testified that employees could not miss or be late more than a day of work a month, and still maintain employment. (Tr. 78, 672). Because the ALJ's decision does not contain any discussion or rationalization as to how the restrictions on transportation would allow Plaintiff to maintain a regular schedule, this issue must be addressed on remand.[3]

The Court further notes that Plaintiff has also experienced significant stretches of time when her medical treatment would also impact her ability to maintain regular attendance to the extent necessary to satisfy employer requirements. For example, there is evidence indicating that Plaintiff would regularly have to attend medical appointments more than once a month to monitor and treat her blood disorder. The ALJ's failure to

---

[3] Defendant provides post-hoc explanations to address this issue, but it is well established that a "Court cannot consider the Commissioner's post-hoc justifications that were not addressed by the ALJ as a basis to affirm the ALJ's decision." *Elder v. Comm'r of Soc. Sec.*, 15-CV-7370, 2017 U.S. Dist. LEXIS 44418, at *39 (E.D.N.Y. Mar. 24, 2017).

consider Plaintiff's need for regular treatment when assessing her ability to obtain and hold employment is also error. "The RFC assessment must be based on all of the evidence in the case record . . . including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8p, 1996 SSR LEXIS 5, *14, 1996 WL 374184 at *5. "Absenteeism due to the frequency of treatment is a relevant factor so long as the treatment is medically necessary and concerns the conditions on which the disability claim is founded." *Bellinger v. Comm'r of Soc. Sec.*, No. 3:17-cv-1692 (MPS), 2018 U.S. Dist. LEXIS 215369, at *4-5 (D. Conn. Dec. 21, 2018) (quoting *Griffin v. Comm'r of Soc.Sec.*, No. 2:15-CV-13715, 2017 U.S. Dist. LEXIS 36620 , 2017 WL 991006, *at *2* (E.D. Mich. Mar.15, 2017)). "Where the ALJ has made no findings about the limitations caused by the claimant's need for treatment, courts have remanded because it is not the role of the court to speculate as to the ALJ's rationale." *Bellinger*, 2018 U.S. Dist. LEXIS 215369, at *5 (quoting *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 U.S. Dist. LEXIS 200302, 2017 WL 6017931, at *5 (D. Conn. Dec. 1, 2017)); *see also Renee S. v. Comm'r of Soc. Sec.*, No. 20-CV-1546S, 2022 U.S. Dist. LEXIS 129727, at *14 (W.D.N.Y. July 21, 2022) ("Despite this evidence and testimony, the ALJ's written decision does not include any discussion or findings concerning what limitations, if any, Plaintiff's rigorous treatment regimen poses to her ability to meet the time-off-task and attendance requirements of the unskilled work the ALJ found she could perform consistent with her RFC. In the absence of such findings for this Court to evaluate and given the requirement that such limitations be fully considered in forming Plaintiff's RFC, this Court finds that remand is required for proper evaluation of the record evidence."); *Arnold v. Comm'r of*

*Soc. Sec.*, No. 17-CV-987S, 2019 U.S. Dist. LEXIS 102690, at *16-20 (W.D.N.Y. June 12, 2019) (holding it was legal error for the ALJ to ignore the amount of time the plaintiff would have been absent from work following surgeries, even though the VE had not testified to the impact absences would have on work.); *Wiltsie v. Comm'r of Soc. Sec.*, No. 17-CV-1201-LJV, 2019 U.S. Dist. LEXIS 118974, at *20-21 (W.D.N.Y. July 16, 2019) (remand was warranted where, as here, the ALJ failed to address the matter of absenteeism from treatment at step five of the sequential evaluation).[4]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is granted and defendant's motion for judgment on the pleadings (Dkt. No.14) is denied. The case is remanded for further administrative proceedings. The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated:      May 19, 2026
            Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge

---

[4] Plaintiff also argues that the case must be remanded because the ALJ failed to follow the Appeals Council's remand order.  The defendant should also consider this argument on remand.

- 10 -